PAUL ZUNG *against* GARDINER G. HOWLAND AND OTHERS.

Where a contract for the carriage of goods by vessel provided that the goods should be taken from alongside by the consignee immediately the vessel was ready to discharge, or otherwise the privilege was reserved to the vessel to land them on the pier at the risk of the consignee, *Held*, that it must be construed to mean that the goods should be at the risk of the consignee after they were safely landed on the pier, and not that the landing should be at his risk.

A clause in a bill of lading, exempting the owners from negligence or default of the pilot, master and mariners, does not exempt them from liability for negligence of stevedores employed by them to unload the vessel.

In an action for negligence in transporting certain cases of glass, it appeared that six cases were damaged to the extent of $80 each, and three cases to the extent of $20 each, and the jury rendered a verdict for $460. On appeal, the court having concluded that the defendants were not liable for the damage to four of the cases, and there being nothing in the evidence to show whether the damage to those cases had been $80 each or $20 each, *Held*, that the judgment could not be modified by reducing it in amount, but must be wholly reversed.

APPEAL by defendants from a judgment of the general term of the Marine Court, affirming a judgment of that court, entered on the verdict of a jury.

The plaintiff, as consignee of 17 cases of glass, shipped to him from London on board the vessel of the defendants, sought to charge them with the damage arising from the breakage of the glass, which breakage he alleged was caused by the negligence of the defendants.

By their answer, the defendants alleged that they had transported the glass upon certain conditions mentioned in the bill of lading given for it, by which it was provided that the defendants should not be answerable for any damage thereto, caused " from perils of the seas and rivers, or from any act, neglect or default whatsoever of the pilot, master or mariners," or for " damage resulting from stowage or contact with other goods, for leakage, breakage (the ship to be free from breakage, from whatsoever cause arising), * * * damage caused by heavy weather or pitching or rolling of the vessel ; * * * also

that the goods should be taken from alongside by the consignee immediately the vessel should be ready to discharge, or otherwise the privilege was reserved to the vessel to land them on the pier  * · *  *  at the expense of the consignee, and at his risk of fire, loss or injury;  *  *  *  also that the ship's responsibility should cease immediately the goods were discharged from the ship's decks." They alleged that they had delivered all the goods in good order, except such portion of them as had been damaged by some of the excepted causes, and that they had been guilty of no negligence.

On the trial, the facts appeared as stated in the opinion, and plaintiff had a verdict for $460.

*Geo. W. Wingate,* for appellants.

*D. S. Riddle,* for respondent.

DALY, Chief Justice.—This judgment will have to be reversed. The bill of lading, in the absence of anything showing the contrary, must be taken as expressing the contract which was made with the defendants for the carriage of the merchandise (*Dow* v. *New Jersey Steam Nav. Co.* 11 N. Y. 191; *Moriarty* v. *Harnden's Express Co.* 1 Daly, 230). It contained numerous exemptions on the part of the defendants in the event of loss or injury, among which were exemptions from liability for any damage caused by heavy weather, or the pitching or rolling of the vessel; or resulting from stowage, breakage, or coming in contact with other goods; or for any act, default, or neglect of the pilot, master, or mariners. It also provided that the goods were to be taken from alongside immediately the vessel was ready to discharge; or that otherwise the defendants might land them on the pier at the consignee's expense and risk, as to fire, loss, or injury; which, of course, must be construed as injuries not arising on or whilst putting them on the pier, through the defendant's negligence, where, as in this case, the vessel is unloaded by stevedores, and not by the mariners of the ship; the liability of the carriers continuing until they had discharged their obligation by landing the goods properly on

the pier and had notified the consignee.   The bill of lading also provided that the ship's responsibility was to cease immediately when the goods were discharged from the ship's deck, and that after the lighterman, wharfinger, or other party applying for the goods, had "signed for the same," that the ship was to be discharged from all claims under the bill of lading.   Immediately after the acknowledgment of the receipt of the seventeen cases of glass, each of which, it appears, was marked "Not upon the flat; handle with great care," there was an entry in writing in these words: "Ship free of breakage, from whatsoever cause arising," which may be assumed to have added nothing to the printed provision in the bill that the defendants were not to be liable for breakage.

It was shown by the portwarden's survey and other testimony, that the cargo had been well stowed, but had shifted; indicating that the vessel had encountered hard weather; the consequences of which were that a large amount of the cargo was damaged in the hold, in which was included at least four of these cases of glass; one of the entries in the port warden's survey being, "four cases of glass, broken by pressure of the cargo stowed in after hold."   For the injury done to these four cases the defendants clearly are not liable.   It arose from causes specially exempted in the bill of lading, and yet for this loss the plaintiff must have recovered, at least, in part.   The plaintiff testified that there were six cases broken entirely and three broken partially.   That the glass in the cases broken entirely was worth $480, or $80 a case, and that the other three were damaged about $20 each, or $60 in all; making the entire loss $540.   The jury gave a verdict for $460, or $80 less than the plaintiff claimed.   Now, even assuming that these three cases partially broken were part of the four stated in the survey to have been broken by the pressure of the cargo in the hold, then one of the cases broken entirely must have been the other case found broken in the hold, and there would only remain five cases that were broken at all, and the whole value of these would be but $400, showing that at least the verdict was for $60 too much.   There is no testimony in the case contradicting the statement in the survey; but, on the contrary, tes-

# NEW YORK—MARCH, 1874. 139

Zung v. Howland.

timony confirming it; for Morgan, the storekeeper of the Internal Revenue Department, testified that after some of the cases had been landed, the cooper told him the cases were broken, and that the rest could not be put out; that he then went down and saw it (the glass) broken in the hold; that he ordered the cooper to put it (the cases) together in some shape, so that it (they, the cases) could be landed, and that he thinks he saw from four to six cases that had their tops torn off; that these cases stood nearly upon their edge forward of the hatch; that the cargo had pressed them together and burst the tops, which naturally sprang off the end pieces; that the pressure of the cargo, when it shifted, had been so great, that it burst (pressed) the sides of the boxes together and forced the top pieces out. This testimony was wholly uncontradicted. The plaintiff's carman saw six of the cases coming out from the vessel, most of which, he says, were broken, and the rest he found upon the pier in a damaged condition, with the exception of one case. It does not appear from his testimony that he had been in the hold, or that he had even been upon the deck; so that there is nothing in his evidence in conflict with Morgan's statement, or the statement in the survey, or anything conflicting in any other part with the evidence offered by the defendants.

We cannot reduce the amount of the judgment less the $60, because we cannot assume upon the evidence, nor could the jury, that three of the four cases mentioned in the survey were the three that were each damaged about one-fourth of their value. The plaintiff's whole case rests upon a conclusion of Kiel, the plaintiff's carman, that the glass, as he expressed it, "got broke in the slings, the sides of the boxes being crushed in by the ropes, or from the way the cases were laid upon the pier; because he found, when he came to the pier, some of the cases lying on their flat side, with planks and boxes on the top of them. The boxes," he said, "seemed all right, but the glass was broken inside, and in six of the boxes the bottoms were broken and the tops were off." If it had clearly appeared that the glass was broken by the negligence of the stevedores in landing the cases upon the dock, or from the manner in which they placed them upon the dock, then there might be a

recovery to the extent of the cases so injured; for there is no exemption of liability in the bill of lading for the negligence of stevedores; it extends only to that of the master, the pilot, or the mariners, and such clauses are not to be extended for the exemption of the carrier (*Perkins* v. *N. Y. Central R. R. Co.* 24 N. Y. 206; *The New Jersey Steam Nav. Co.* v. *The Merchants' Bank*, 6 How. U. S. R. 383). But the uncontradicted evidence, that some of the cases were injured and the glass broken in the hold, cannot be ignored. The cooper testified that his attention was called to the glass when it was in the hold by his man, and he was asked, "Was it sound or broken *there* ?" And he answered, "Broken; the glass and the cases were broken." Assuming that the plaintiff's carman was right (he having testified that he heard the glass crack in the slings before it was landed), and that the cases were injured and the glass broken in the act of unloading, or from the manner in which the cases were placed upon the dock, still it would be impossible, upon the evidence, to say what number of cases were injured in this way; whether they embraced those that were partially, or those that were totally injured; and it therefore being impossible to distinguish, all that we can do is to reverse the judgment, upon the general ground that the amount recovered is not warranted by the evidence; and we cannot, nor could the jury, upon the evidence before them, distinguish what proportion of the property injured was covered by the exemption in the bill of lading, and what was not. In other words, it does not appear, upon the plaintiff's own showing, what loss he sustained through causes for which the defendants were liable as common carriers, such causes not being embraced in the stipulations exempting them from liability.

The judgment must, therefore, be reversed.

J. F. DALY and LARREMORE, JJ., concurred.

Judgment reversed.